■ R. WILLIAM VOLLBRECHT, Appellant, v HOWARD F. JACOBSON et al., Respondents. [838 NYS2d 188]—

Spain, J. Appeals from an order and amended order of the Supreme Court (McNamara, J.), entered September 29, 2006 and October 26, 2006 in Albany County, which, inter alia, denied plaintiff's motion for partial summary judgment.

This action involves a dispute over ownership of a three-acre parcel of real property located in the Town of Guilderland,

Albany County. In 1926, Albert Ebert and Gertrude Ebert acquired 55 acres, including the three acres which are the subject of this litigation. In 1960, the Eberts deeded that property to Ernest Swanson and Mildred Swanson. The deed did not except the three acres at issue here, but a memorandum of agreement (hereinafter the memorandum) executed contemporaneously with the deed—but never recorded—clearly expressed the parties' intent that the Swansons would deed a three-acre plot back to the Eberts once the exact lines of the parcel were determined. After obtaining a survey and a metes and bounds description of the three-acre parcel, Albert Ebert presented a deed to the Swansons for execution. The Swansons apparently refused to execute the deed, prompting Albert Ebert, in 1965, to commence an action seeking specific performance of the memorandum. That action was never resolved, for reasons which are not clear from the record.

In 1973, the Swansons sold their property, specifically excepting the three-acre parcel at issue. In 1987, Mildred Swanson deeded the three-acre parcel to plaintiff for $10,000 via a quitclaim deed. In 2002, the devisees of Albert Ebert deeded the property to defendant Howard F. Jacobson, also by quitclaim deed, and assigned him all of their rights and interest in the memorandum.

Plaintiff commenced this action in 2005, essentially seeking to quiet title to the three-acre parcel. Defendants counterclaimed for reformation of the 1960 deed to exclude the three-acre parcel and, in the alternative, for a determination that they had acquired the parcel by adverse possession. Plaintiff moved for partial summary judgment declaring Jacobson's deed a nullity and dismissing the counterclaims and seeking permission to amend his complaint to add a cause of action for slander of title. Supreme Court denied plaintiff's motion in all respects, prompting this appeal by plaintiff.

Initially, Supreme Court properly denied plaintiff's motion for partial summary judgment seeking to nullify Jacobson's deed. Plaintiff argues that because his 1987 deed was recorded, the 2002 deed to Jacobson should be set aside as null and void. We agree with the court that defendants successfully raised a question of fact as to whether plaintiff was a bona fide purchaser for value, or whether he had actual knowledge of their claim to the property prior to taking the quitclaim deed from the Swansons in 1987. In any event, it would be premature to rule on the validity of the 2002 deed before the issue at the heart of this matter is resolved, namely, whether the predecessors in interest to plaintiff and Jacobson—the Swansons or the Eberts—actually

owned the property at the point that plaintiff accepted the 1987 quitclaim deed.

We do agree with plaintiff, however, that defendants' first counterclaim, seeking reformation of the 1960 deed, must be dismissed. A claim for reformation based on mistake or fraud typically carries with it a six-year limitations period measured from the time of the mistake or discovery of the fraud (*see* CPLR 213 [6], [8]; *Wilshire Credit Corp. v Ghostlaw*, 300 AD2d 971, 973 [2002]; *see also Matter of Wallace v 600 Partners Co.*, 86 NY2d 543, 547 [1995]; *Sitkiewicz v County of Sullivan*, 256 AD2d 884, 885 [1998], *appeal and lv dismissed* 93 NY2d 908 [1999]). Albert Ebert commenced an action against the Swansons in 1965 to enforce the memorandum after the Swansons apparently refused to keep the bargain memorialized in that document; thus, Ebert was clearly on notice that the Swansons were asserting title to the parcel 40 years before this action was commenced.

In any event, the counterclaim would have to be dismissed on its merits. " 'A party seeking reformation must establish, by clear and convincing evidence, that the writing in question was executed under mutual mistake or unilateral mistake coupled with fraud' " (*Herron v Essex Ins. Co.*, 34 AD3d 913, 914 [2006], *lv dismissed* 8 NY3d 856 [2007], quoting *Leavitt-Berner Tanning Corp. v American Home Assur. Co.*, 129 AD2d 199, 201-202 [1987], *lv denied* 70 NY2d 609 [1987]). Inasmuch as the memorandum contemplated a second deed which would transfer title of the three-acre parcel back to the Eberts, defendants cannot claim mutual mistake with respect to the terms of the 1960 deed transferring title to the entire 55 acres (*see Gold v New York State Bus. Group*, 255 AD2d 628, 629-630 [1998]). Instead, defendants rely on unilateral mistake coupled by fraud on the part of the Swansons, i.e., defendants assert that because the Swansons refused to convey the three-acre parcel back to the Eberts when, circa 1965, Albert Ebert obtained the metes and bounds description, the Swansons never intended—from the beginning—to deed that parcel back as contemplated by the memorandum. However, " ' "[t]he mere fact that the expected performance was not realized is insufficient to demonstrate that [the Swansons] falsely stated [their] intentions" ' " at the time the 1960 deed and memorandum were executed (*Tanzman v La Pietra*, 8 AD3d 706, 708 [2004], quoting *McGovern v Best Bldg. & Remodeling*, 245 AD2d 925, 927 [1997]). Defendants failed to present any evidence that the Swansons—in 1960—did not intend to keep the promise made in the memorandum. Absent any proof of such intent, the reformation counterclaim should

be dismissed (*see Hess v Baccarat*, 287 AD2d 834, 837 [2001]; *Shawangunk Conservancy v Fink*, 261 AD2d 692, 694 [1999]).

Clearly, any attempt by defendants to enforce the memorandum at this point is untimely (*see* CPLR 213 [2]), as is a cause of action by defendants to quiet title (*see* CPLR 212 [a]; *Freer v Poncic*, 172 AD2d 959, 959-960 [1991]; *see also Acres v Hitchcock*, 77 AD2d 744, 745 [1980], *appeal dismissed* 51 NY2d 877 [1980], *lv denied* 53 NY2d 601 [1981]). Unavailing is defendants' reliance on the rule that "as to one who is in possession of real property under an instrument of title, the statute never begins to run against his right to reform that instrument until he has notice of a claim adverse to his under the instrument, or until his possession is otherwise disturbed" (*Hart v Blabey*, 287 NY 257, 262-263 [1942]; *see Wilshire Credit Corp. v Ghostlaw, supra* at 973). Here, the action commenced by Albert Ebert seeking specific performance of the memorandum establishes that, as early as 1965, he and his successors had notice that the Swansons were asserting superior title to the property.

Next, we find that summary judgment was properly denied as to defendants' adverse possession counterclaim. "To acquire title to real property by adverse possession, common law requires the possessor to establish that the character of the possession is 'hostile and under a claim of right, actual, open and notorious, exclusive and continuous,'" the type of possession which "would give the owner a cause of action in ejectment against the occupier throughout the prescriptive period" (*Ray v Beacon Hudson Mtn. Corp.*, 88 NY2d 154, 159 [1996], quoting *Brand v Prince*, 35 NY2d 634, 636 [1974]). Clearly, issues of fact exist as to whether the nature of defendants' possession was sufficient to establish ownership. Defendants claim to have continuously and openly used the three-acre parcel for activities, including picking fruit, drawing sand or dirt, repairing and storing vehicles, pasturing and birthing animals and recreational walking, biking, snowmobiling and motorcycle riding. They claim to have maintained the property by mowing the grass, cutting trees and shrubs, opening drains, installing culverts, repairing fences and plowing snow.* On the other hand, plaintiff has paid all the taxes levied against the property since taking

---

* We reject plaintiff's assertion that defendants cannot claim adverse possession under color of title based upon a written instrument (*see* RPAPL 511). No dispute exists that the Eberts originally held title, by deed, to the disputed parcel and it is essentially defendants' position that the memorandum demonstrates that the Eberts never intended, nor accepted consideration for, a transfer of that parcel (*see* RPAPL 511 [where possessor is taken under claim of title founded "upon a written instrument . . . as being a conveyance of the premises in question"]; *Reid v City of New York*, 274 NY 178, 182

record title in 1987, posted the property and claims that, although defendants used the property, they did so with his implicit permission. Under these circumstances, Supreme Court properly denied plaintiff's motion to dismiss defendants' adverse possession counterclaim (*see Fatone v Vona*, 287 AD2d 854, 857 [2001]; *Gallas v Duchesne*, 268 AD2d 728, 730 [2000]).

Finally, we discern no error in Supreme Court's decision to deny plaintiff's motion to amend the complaint to add a cause of action for slander of title. Leave to amend a pleading is within the sound discretion of the trial court and an amendment need not be granted where the proposed amendment clearly lacks merit (*see Rothberg v Reichelt*, 5 AD3d 848, 849 [2004]; *Fleming v Barnwell Nursing Home & Health Facilities*, 309 AD2d 1132, 1133 [2003]). To support a claim for slander of title, it was incumbent on plaintiff to allege facts which demonstrate that defendants made false communications casting doubt on the validity of plaintiff's title with malicious intent, or at a minimum, with "reckless disregard for their truth or falsity" (*Fink v Shawangunk Conservancy, Inc.*, 15 AD3d 754, 756 [2005], quoting *Hirschhorn v Town of Harrison*, 210 AD2d 587, 588 [1994]; *see Brown v Bethlehem Terrace Assoc.*, 136 AD2d 222, 224 [1988]). Here, the record is devoid of evidence of malicious intent and defendants' viable claim of ownership defeats any suggestion that their attack on plaintiff's title was made with reckless disregard of the truth (*see Fink v Shawangunk Conservancy, Inc., supra* at 756). Accordingly, we will not disturb Supreme Court's decision to deny plaintiff's motion to amend.

Mercure, J.P., Peters, Rose and Lahtinen, JJ., concur. Ordered that the order and amended order are modified, on the law, without costs, by reversing so much thereof as denied plaintiff's motion for partial summary judgment dismissing defendants' counterclaim for reformation; motion granted to that extent and said counterclaim dismissed; and, as so modified, affirmed.

[1937] [claim of right under written instrument where evidence established that the deed was intended but never issued]).